## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TAYLOR CARLISLE**                                      **CIVIL ACTION**

**VERSUS**                                               **NO. 16-838**

**NEWELL NORMAND, ET AL.**                               **SECTION "E"(2)**

## REPORT AND RECOMMENDATION

This matter and the petitioner's Motion for Full Evidentiary Hearing (Rec. Doc. No. 9) were referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the petitioner's Motion for Full Evidentiary Hearing (Rec. Doc. No. 9) be **DENIED** and the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as moot or, alternatively, **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The record reflects that the petitioner, Taylor Carlisle, is an inmate housed in the Jefferson Parish Correctional Center.[2]  The custodial subject of his federal habeas petition was a six month sentence for his second contempt of court imposed by the Jefferson Parish Drug Court on August 25, 2015.  That sentence has now lapsed, but he continues to be held in custody based upon a petition to revoke his probation, which remains pending in the state court and which is not the subject of this federal habeas petition.[3]

Carlisle originally was charged by bills of information on December 17, 2012, in Jefferson Parish for possession of oxycodone (percocet) in Case No. 12-6158 and theft of goods, possession of marijuana, and possession of drug paraphernalia in Case No. 12-6159.[4]  He eventually entered a guilty plea to all of the charges on January 30, 2013.[5]  In Case No. 12-6159, he was sentenced to time served.[6]  In Case No. 12-6158, he entered the guilty plea under the Louisiana Drug Court Statute, La. Rev. Stat. § 13:5304, and his sentence was deferred contingent upon his completion of the Jefferson Parish Intensive

---

[2]Rec. Doc. No. 1; see also, Rec. Doc. No. 6.

[3]See Rec. Doc. No. 29.

[4]St. Rec. Vol. 1 of 3, Bill of Information, No. 12-6158, 12/17/12; Rec. Doc. Nos. 1 & 6.

[5]St. Rec. Vol. 1 of 3, Plea Minutes, 1/30/13; Plea of Guilty & Waiver of Rights, 1/30/13; Rec. Doc. Nos. 1 & 6.

[6]Rec. Doc. Nos. 1 & 6.

Drug Program while on probation.[7]  This program required Carlisle to maintain regular contact with the program probation officer and the drug court, attend regular Alcoholics Anonymous ("AA") meetings, consent to regular drug testing and present required documentation to the probation officer and the drug court.[8]

On August 27, 2015, Carlisle "did not appear before the bar of the Court this day for Drug Court," which led to the issuance of an attachment for his appearance.[9]  The attachment required Carlisle "to answer for a contempt in neglecting or refusing to attend before said Court as a defendant."[10]  Later that day, Carlisle met with his probation officer and appeared before the drug court.[11]  At the meeting with his probation officer, Carlisle failed to present required documentation, provided inaccurate information to the probation officer, and admittedly lied to the probation officer, all of which was reported to the drug court when Carlisle appeared.[12]  Carlisle admitted to the drug court that he lied about losing the documentation he was supposed to deliver and lied about attending

---

[7]St. Rec. Vol. 1 of 3, Plea Minutes, 1/30/13; Plea of Guilty Under 13:5304, 1/30/13.

[8]St. Rec. Vol. 1 of 3, Schedule of Fines, Fees, Sentencing Provisions & Probation Requirements, 1/30/13.

[9]St. Rec. Vol. 1 of 3, Minute Entry #47, 8/25/15.

[10]St. Rec. Vol. 1 of 3, Minute Entry #48, 8/25/15; Attachment, 8/25/15.

[11]St. Rec. Vol. 1 of 3, Minute Entry #49, 8/25/15; St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[12]Rec. Doc. No. 17, p. 2, pp. 3-4, 8/25/15 entry; St. Rec. Vol. 1 of 3, Minute Entry #49, 8/25/15.

certain AA meetings.[13]  At the request of the probation officer, the drug court concluded that Carlisle misrepresented this information and imposed a sanction of six months in jail "flat-time" for contempt after which a probation revocation proceeding would be scheduled.[14]  Carlisle was taken into custody at 1:00 p.m. that day and ordered to return to drug court on September 1, 2015.[15]  The previously issued attachment was deemed satisfied on August 27, 2015.[16]

Upon Carlisle's return to court on September 1, 2015, he was accompanied by retained counsel and both his retained counsel and Carlisle's current federal habeas counsel were allowed to attend the meeting with probation staff.[17]  Attending that meeting were the drug court judge, Carlisle, his retained and current counsel, the prosecutor, the probation officer and treatment staff.[18]  During the meeting, Carlisle's counsel was informed of the program's sanction procedures, Carlisle's sanction history, and the allegations against Carlisle underlying the contempt.[19]  At that meeting, the drug

---

[13]Rec. Doc. No. 17, pp. 3-4, 8/25/15 entry.

[14]Rec. Doc. No. 17, pp. 3-4, 8/25/15 entry; St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15; Per Curiam, 11/23/15.

[15]Rec. Doc. No. 17, pp. 3-4, 8/25/15 entry; St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15; Per Curiam, 11/23/15; St. Rec. Vol. 1 of 3, Arrest Register, 8/25/15.

[16]St. Rec. Vol. 1 of 3, Recall of Attachment, 8/27/15.

[17]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15; Rec. Doc. Nos. 1, 6, 9, 15, 19.

[18]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15; Rec. Doc. Nos. 1, 6, 9, 15, 19.

[19]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

court allowed Carlisle's counsel to present mitigating evidence and argument regarding Carlisle's remorse, record of negative drug tests, employment and child support.[20]

After the meeting, the drug court judge, prosecutor, defense counsel and program officials appeared in open court, where Carlisle's counsel sought leave to put his mitigation evidence on the record.[21]   The judge advised counsel that there was no recording being made.  The court noted counsel's objections and replied to his request for a transcript by repeating that no recording was being made.[22]  After considering the mitigating information provided by counsel at the meeting, the drug court determined that the contempt and jail sanction were warranted.[23]  The drug court then reiterated that Carlisle was to serve six months in jail for contempt for admittedly lying to his probation officer and ordered Carlisle held after completion of that term for a probation revocation proceeding at a later date.[24]

---

[20]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[21]St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15; Per Curiam, 11/23/15; St. Rec. Vol. 1 of 3, Minute Entry #49, 8/25/15.

[22]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[23]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[24]St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15; Per Curiam, 11/23/15; St. Rec. Vol. 1 of 3, Minute Entry #49, 8/25/15; Minute Entry, 9/1/15; Rec. Doc. No. 17, pp. 3-4, 8/25/15 entry.

Both the Louisiana Fifth Circuit and the Louisiana Supreme Court denied relief on review of Carlisle's writ applications following the contempt proceedings.[25] Specifically, after receiving the drug court's October 9, 2015, per curiam reasons for the contempt and sentence, the Louisiana Fifth Circuit found that Carlisle's waiver of rights upon entry of his original drug court guilty plea also waived his due process rights during the subsequent drug court proceedings, which meant the proceedings did not have to be recorded.[26]   The appellate court further held that Carlisle's contempt charge and the related sentence were within the authority of the drug court.  The Louisiana Supreme Court obtained a second per curiam opinion from the drug court and denied Carlisle's writ application without stated reasons.[27]

II.   FEDERAL PETITION

Carlisle challenges his contempt sentence and seeks his release from the contempt order on the following grounds:[28] (1) The contempt sentence imposed exceeded the statutory maximum for contempt and the drug court's authority to sanction. (2) The conviction for contempt/sanctions cannot adequately be challenged because they were

---

[25]State v. Carlisle, 184 So.3d 709 (La. 2016); St. Rec. Vol. 1 of 3, La. S. Ct. Order, 2015-KK-2078, 1/15/16; 5th Cir. Order, 15-KH-597, 10/16/15.

[26]St. Rec. Vol. 1 of 3, 5th Cir. Order, 15-KH-597, 10/16/15; St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15.

[27]Carlisle, 184 So.3d at 709; St. Rec. Vol. 1 of 3, La. S. Ct. Order, 2015-KK-2078, 1/15/16; St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[28]Rec. Doc. No. 1, 1-3.

imposed without a record, in a closed courtroom, with no opportunity to be heard in defense, and without the defendant or prosecutor present. (3)  There is no state statutory authority to apply the general waiver of appeal and due process rights entered at the time of the underlying guilty plea to bar due process in and review of the contempt conviction and sentence issued by the drug court. (4) He was denied effective assistance of counsel during the contempt/sanction proceedings, including the out-of-court hearing with the probation officer.

In its response in opposition to Carlisle's petition, the State asserts that review of the ineffective assistance of counsel claim was not exhausted in the state courts.[29]  The State also asserts that the claims of excessive sentence and inadequate court records and transcripts are not cognizable on habeas corpus review because they involve the application and interpretation of state law.  The State further asserts that the state courts' denial of relief on the three exhausted claims was not contrary to federal law.

The State also alleges that Carlisle had a long history of noncompliance with the terms of his drug court probation and was frequently penalized with sanctions, community service and jail time, including a 90 day contempt sentence before his current imprisonment.

---

[29]Rec. Doc. No. 6.

III.     FEDERAL PETITION IS MOOT

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[30] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Carlisle's petition filed by counsel on February 1, 2016.

The threshold questions in habeas review under the AEDPA are whether the petition is timely and whether the petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  In addition, 28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Maleng v. Cook, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); 28 U.S.C. § 2254(a).

---

[30]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

In this case, the State asserts in its response that Carlisle failed to exhaust state court review of the ineffective assistance of counsel claim.  Since that time, during oral argument on Carlisle's motion, the State asserted that Carlisle's petition is moot because he has completed the sentence on the contempt charge.  The parties do not contest that Carlisle completed the flat-time contempt sentence of six months no later than March 1, 2016, and his continued incarceration is related to pending probation revocation hearing.

To be eligible for federal habeas corpus relief, a petitioner must be "in custody" at the time the petition is filed for the conviction or sentence under attack.  Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 400-401 (2001); Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009).  In Lackawanna, the Supreme Court recognized a single exception to this rule relating to Sixth Amendment claims of failure to appoint counsel, which is not an issue in this case.[31]

Thus, whether a petitioner is "in custody" is determined as of the date the federal habeas petition is filed.  Spencer v. Kemna, 523 U.S. 1, 7 (1998); Carafas v. LaVallee, 391 U.S. 234, 238 (1968); Port v. Heard, 764 F.2d 423, 425 (5th Cir. 1985).  When the jurisdictional prerequisite of custody is met at the time of filing, jurisdiction is not

---

[31]As explained by the Sixth Circuit in Abdus-Samad v. Bell, 420 F.3d 614, 630 (6th Cir. 2005), a three-justice plurality of the Lackawanna Court speculated that other exceptions to this rule of federal habeas non-reviewability might exist in other circumstances, including (1) where a state court, without justification, has refused to rule on a properly presented constitutional claim, and (2) where a defendant subsequently obtains compelling evidence of his actual innocence. Even these circumstances do not exist in this case.

defeated by the petitioner's <u>subsequent</u> release from custody. <u>Carafas</u>, 391 U.S. at 238; <u>Port</u>, 764 F.2d at 425.

There is no question that Carlisle was incarcerated, <u>i.e.</u> in custody, for the contempt charge on the date he filed this federal petition for habeas corpus relief. The custody requirement was clearly met in this case at the time of filing. The fact that Carlisle has completed his sentence for contempt does not necessarily divest this court of jurisdiction over his federal petition.

The Supreme Court, however, has recognized that, although jurisdiction is not defeated, an <u>un</u>conditional release from prison can render a federal habeas petition moot. <u>Spencer</u>, 523 U.S. at 7. To avoid mootness, the petitioner must show "some concrete and continuing injury other than the now-ended incarceration." <u>Id</u>. If the petitioner is attacking the validity of the criminal conviction itself, and not just the sentence, the court may presume continuing collateral consequences, even if they may be remote and unlikely to occur. <u>Id</u>. at 7-8; <u>Maleng</u>, 490 U.S. at 491-92 (citing <u>Carafas</u>, 391 U.S. at 237 (a convicted felon's inability to vote in a state election or serve as a juror, among other collateral consequences, would prevent a federal habeas challenge from being moot)).

In this case, Carlisle has failed to establish any collateral consequences from his contempt conviction or sentence, and none can be discerned from this record. Carlisle was jailed for six months as a sanction for his contempt after he lied to his probation officer and the drug court about lost documentation and his attendance at required AA

meetings.  He does not suggest that this contempt finding will be used against him in any future proceeding or that it has any lingering restriction on his liberty.  There is no question that his failure to comply with the drug court's program requirements (the subject of his lie) may be used to support a future revocation proceeding.  The contempt itself, however, according to the records and the state drug courts' reasons, was a sanction for the lies and not Carlisle's failure to comply with his probation requirements.  Carlisle has not shown and the record does not reflect that the contempt conviction or sentence have continuing collateral consequences that would maintain a controversy for this federal court to resolve.

The Supreme Court has also recognized another category of cases that may survive a finding of mootness when the dispute is "capable of repetition" while "evading review."  Turner v. Rogers, 564 U.S. 431, 439 (2011) (quoting Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515 (1911)).  The court found that a case will fall into this category and the "dispute remains live, if '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  Turner, 564 U.S. at 439-40 (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).

In Turner, the Supreme Court addressed the mootness of a proceeding after the appeal of a state civil contempt proceeding.  The petitioner asserted constitutional

challenges to his contempt conviction and sentence of twelve months in jail after he failed to pay child support.  The court held that the case was not moot, although Turner had completed his jail sentence while his state appeal was under review and before the matter was brought before it.  In finding the controversy continuing, the Supreme Court held:

> Our precedent makes clear that the "challenged action," Turner's imprisonment for up to 12 months, is "in its duration too short to be fully litigated" through the state courts (and arrive here) prior to its "expiration." At the same time, there is a more than "reasonable" likelihood that Turner will again be "subjected to the same action" . . .  [because] Turner has frequently failed to make his child support payments.

(citations omitted) Turner, 564 U.S. at 440.

Under the first factor, Carlisle's six month prison sentence was clearly "too short" to allow his complaints to be addressed on federal habeas review after state court review of his contempt proceeding.  However, the record fails to support a finding that Carlisle is likely to find himself in the same situation again to satisfy the second Turner factor.

Carlisle does not suggest that he will lie again or that he will face contempt for again lying to the drug court and its officers.  While Carlisle may be placed in jail for failing to meet his probation requirements or even have his probation revoked, it is not reasonably expected that he again will be jailed for contempt because he previously lied to the drug court and its staff.  Carlisle has made no showing that he will repeat the same behavior that led to this contempt ruling and sentence.  See Eichwedel v. Curry, 700 F.3d

275, 280-81 (7th Cir. 2012) (habeas matter is moot where petitioner has completed the short sentence and is unlikely to repeat the behavior leading to his punishment).

Applying the foregoing factors, I find that Carlisle's completed contempt sentence during the pendency of this case has rendered his federal habeas petition moot, and no exceptions to that doctrine are established for this federal court to continue its review. His case should be dismissed with prejudice for this reason. However, if a reviewing court finds some likelihood that this case remains in controversy or that Carlisle will face some direct collateral consequence from this contempt conviction for lying to the drug court and the probation officer, Carlisle's federal petition should be dismissed without an evidentiary hearing for failure to exhaust state court remedies, all for the reasons that follow.

III.     MOTION FOR FULL EVIDENTIARY HEARING (REC. DOC. NO. 9)

Carlisle filed a Motion for Full Evidentiary Hearing, Record Doc. No. 9, requesting that the court hold an evidentiary hearing on the underlying federal habeas corpus petition brought pursuant to 28 U.S.C. § 2254. Carlisle contends that the court should hold the hearing under Section 2254(e), (f) and (g), because the state court records are incomplete and insufficient to support the contempt ruling by the drug court. He also contends that the State's response contains inaccurate factual contentions that he claims are material to the issues before the court. The State did not file a written opposition to the motion, but provided oral argument at the hearing conducted on April 6, 2016.

A.     <u>PETITIONER'S MOTION</u>

Carlisle seeks an evidentiary hearing to develop facts on grounds that the State's opposition and the state court records are unreliable.  He contends that the records do not include any transcripts or contemporary written findings of fact to support the contempt conviction and the sentence.  He further argues that the record submitted by the State is incomplete, because it does not contain the records of the drug court's probation program, since the drug court does not maintain those records.

Carlisle also asserts that records of the drug court proceedings, such as transcripts or more detailed minutes, have been requested to no avail and this has prevented him from responding to the State's probation revocation proceedings.  Carlisle argues that an evidentiary hearing is needed to develop facts even if records are produced so that he can obtain testimony related to the veracity of any records produced.

Carlisle also contends that the facts recited in the State's response are unreliable because they are based on minute entries and the per curiam opinion of the drug court, and there are no transcripts or more accurate records to support the findings made in those documents.

Carlisle  claims the State is incorrect in its assertion that Carlisle's drug court counsel was able to offer mitigating evidence at a hearing on September 1, 2015.  Carlisle's current counsel, acting as a witness to the events at the hearing on September 1, 2015, claims that the drug court judge did not allow Carlisle's defense counsel to

introduce mitigating evidence or to proffer that evidence. Current counsel alleges that there are other errors in the State's procedural history and the drug court's per curiam order, which are not or cannot be supported by the limited record.

Carlisle further asserts that the State's recitation of the events leading to his first contempt differ from the limited record from the drug court, emphasizing the unreliability of the record itself. He also contends that only an evidentiary hearing will establish what really happened during the closed, unrecorded proceedings and clarify whether there were numerous sanctions imposed against Carlisle for multiple violations of the program during the past three years.

In the motion, Carlisle also reasserts his claims that the sentence was imposed without statutory authority, without a proper record and without reasons for the contempt finding. He argues that under La. Rev. Stat. § 13:5304, the drug court had no authority to impose jail time and that a sentence for contempt under La. Code Crim. P. art. 899.1 cannot exceed ten (10) days in jail. He also argues that the State has filed a motion to revoke his drug program probation, which will subject him to a multiple bill on the underlying sentence despite the fact that he has paid thousands of dollars to participate in the probation program. He also argues that the contempt label was placed on this charge as a "subterfuge" to exceed the maximum sanctions available and use contempt under La. Code Crim. P. art. 21 to reach a higher sentence.

After filing the original action, Carlisle submitted the affidavit of one of his state court defense attorneys, Record Doc. No. 15, and other affidavits and documents which I have reviewed and considered.[32]  Since then, Carlisle also has filed documents received from the drug court program which, upon review, contain testing and reporting documents that predate anything relevant to the August 25 and September 1, 2015, contempt hearings.[33]  Nevertheless, I reviewed these records, which are filed under seal due to the private nature of the information referenced therein.

B.    ORAL ARGUMENT

At oral argument on April 6, 2016, Carlisle argued that the state trial court records provided by the State contain only brief minute entries which tend to show that the drug court held proceedings and made rulings as to Carlisle's status without him, his counsel, an assistant district attorney or a court reporter present.  Counsel specifically pointed to the minute entries dated August 25, 2015, when the initial contempt ruling was made allegedly outside of Carlisle's presence.  Counsel argued that the drug court's procedure was to conduct reviews with the probation officer outside of the courtroom and only place limited information on the record without transcripts.  As a result, Carlisle seeks additional records from the out-of-court proceedings or the opportunity to develop the information adduced in the pre-court conference through an evidentiary hearing.

---

[32]See also, Rec. Doc. Nos. 26, 29.

[33]Rec. Doc. No. 24 (sealed).

Carlisle also reiterated that a drug court infraction cannot result in jail time, while a contempt proceeding can be punished by jail time. Thus, he argues that in his case, if the drug court found him to have violated his probation, the jail sentence exceeds the authority of the drug court under Louisiana law. If, however, the drug court found Carlisle in contempt, the drug court denied him due process under Louisiana law and the drug court waiver of rights did not apply. Thus, Carlisle argues that he is entitled to an evidentiary hearing to gather information related to the out-of-court hearings held by the drug court to determine the basis for the jail sentence imposed on August 25, and reiterated on September 1, 2015. Carlisle urges that the per curiam opinion issued by the drug court was insufficient and otherwise unsupported by anything in the record provided by the State and made available to his counsel.

In response, the State argued during oral argument that Carlisle's habeas petition is moot, because his contempt sentence expired on March 1, 2016 and carries no collateral consequences to maintain jurisdiction in this court. In addition, the State asserted that, contrary to Carlisle's suggestions, the state court record is replete with instances of probation violations, other noncompliance and infractions by Carlisle in the drug court. These instances and the record minute entries were relied upon and clarified by the drug court in its per curiam opinion issued October 9, 2015 setting forth the reasons for the contempt and sentence. Thus, the State contends that there is no basis for an evidentiary hearing on the underlying habeas petition under the AEDPA or current

17

Supreme Court law, specifically <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011).  Under current law, this court's habeas review is limited to the record and evidence before the state courts that decided the issue on the merits.  The State also urged that the case law relied upon by Carlisle is either not precedential in this circuit and/or predated the AEDPA and current Supreme Court law governing the introduction of new evidence and evidentiary hearings.  The State further asserted that to the extent any additional records were held by the probation office, an attempt would be made to obtain and produce them to the court.  The State provided additional records to the court on April 13, 2016.[34]

In his post-argument supplemental memorandum, Carlisle continued to complain of the lack of public access to and transcripts of any proceedings held before the drug court.[35]  Carlisle also asserted that the newly provided probation records are not certified and contain conclusory information which cannot be confirmed without transcripts or an evidentiary hearing.  Carlisle also complains that the drug court and the Louisiana Supreme Court failed to provide his drug court counsel with copies of  the drug court's second per curiam opinion issued on November 23, 2015, and the Louisiana Supreme Court order requesting that opinion.

Carlisle also asserts numerous new and some repetitive arguments related to his pending probation revocation proceeding, none of which are before this court.  In

---

[34]Rec. Doc. No. 17.

[35]Rec. Doc. No. 19.

addition, to support his assertions of lack of due process and incomplete records necessitating a federal evidentiary hearing, Carlisle submitted six affidavits and other exhibits not presented to the state courts, most of which do not specifically address the actual content of the August 25, 2015, hearings before the drug court. The affidavits, with the exception of those from Carlisle's retained drug court counsel, include legal conclusions reached by unqualified lay persons and exceed the scope of personal knowledge concerning the alleged motivation and failings of the drug court and its procedures.

C.   THE MOTION SHOULD BE DENIED

Carlisle requests an evidentiary hearing to develop factual matters underlying the state drug court's rulings and proceedings which he deems necessary for this court to address his claims arising from the contempt order issued August 25, 2015 and reiterated by the drug court on September 1, 2015. Carlisle has not identified what facts might be developed that would be relevant to present a federal constitutional challenge to his contempt conviction and sentence. Instead, Carlisle's efforts appear to be to obtain information relevant to the revocation proceeding pending before the drug court.

The only issues properly before this federal habeas court are whether the contempt proceeding and resulting sentence imposed on August 25, 2015, exceeded the drug court's jurisdictional authority and denied Carlisle due process, and whether he was denied effective assistance of counsel at those hearings. To support his request for an

evidentiary hearing on those issues, Carlisle asserts that the drug court's ruling and the later issued per curiam opinions explaining the reasons for the contempt finding, the sentence and the events at each hearing, cannot be confirmed or properly challenged because there are no transcripts of the proceedings.

Carlisle also challenges the accuracy of the facts presented in the State's response and the state court records themselves concerning matters occurring over the three year period leading to the motion to revoke his probation.  These concerns are not directly related to the contempt hearing at issue here and are beyond the scope of the habeas petition filed in this court.  Carlisle cannot be allowed to use this federal proceeding to conduct discovery and develop a record to defend against the pending revocation proceeding, which is not a matter before this federal habeas court.

The records of the drug court and its program officers are sufficient to review Carlisle's due process and ineffective assistance of counsel claims.  While Carlisle has not specifically requested that this court assess the propriety of the contempt finding under which he was jailed, only the procedural due process of those proceedings, I nevertheless reviewed the minute entries from August 25, 2015, appearing in the state court and probation records.  The sequence of the minute entries demonstrates that Carlisle was sanctioned and imprisoned that day for lying to his probation officer and the drug court and for failing to attend AA meetings which he claimed he had attended. Contrary to Carlisle's assertions, the events of August 25 and September 1, 2015, are

Case 2:16-cv-00838-SM   Document 30   Filed 06/03/16   Page 21 of 34


reflected in the court's minute entries and the probation office reports provided by the State.

Carlisle's claims questioning the drug court's jurisdiction also do not require that Carlisle develop any facts. These questions turn on whether <u>Louisiana law</u> allowed the drug court to hold Carlisle in contempt as a sanction for his misrepresentations to the court and whether Carlisle's waiver of all due process rights extended to the collateral proceedings for contempt in the drug court. As recognized by the state courts, Carlisle signed a plea form on January 30, 2013, pursuant to the drug court statute where he waived "all due process rights . . . involved in the administration of the Drug Court and in particular the imposition of sanctions by the Drug Court Judge."[36]  This included Carlisle's agreement "to abide by all sanctions imposed by the Drug Court Judge including jail service, ... AA and NA meetings, ... which, in the judgment of the court, would be beneficial to me."[37]

Part V(A) of the Schedule of Fines, Fees, Sentencing Provisions & Probation Requirements, also signed by Carlisle on January 30, 2013, establishes his agreement that Carlisle "shall be subject to arrest at any time for the purpose of returning defendant to the court for disposition."[38]  That same section also provides:

---

[36]St. Rec. Vol. 1 of 3, Plea of Guilty Under 13:5304, page 2, ¶3, 1/30/13.

[37]<u>Id</u>., p. 2, ¶4.

[38]St. Rec. Vol. 1 of 3, Schedule of Fines, Fees, Sentencing Provisions & Probation Requirements, 1/30/13.

FAILURE TO COMPLY with any one of the foregoing sentencing provisions and/or probation conditions may result in any or all of the following: [. . .] B. <u>Finding defendant in contempt of court and imposition of punishment</u> even if the term of probation has ended. [. . .][39]

Each of these provisions supports the conclusions reached by the drug court and the Louisiana appellate courts in denying relief to Carlisle on the jurisdiction issues. Carlisle's claims can be addressed without further factual development at a federal evidentiary hearing. They turn on the language of these forms and interpretation of Louisiana law.

Carlisle fails to establish a right to a federal evidentiary hearing. The law is clear that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 563 U.S. at 181. Carlisle's references to outdated state and federal appellate court rulings and pre-AEDPA law are unpersuasive.

The AEDPA, through the current federal habeas statute governing evidentiary hearings, is clear: When a petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court <u>shall</u> <u>not</u> hold an evidentiary hearing," except under the limited circumstances statutorily mandated under 28 U.S.C. § 2254(e)(2), which provides as follows:

---

[39]<u>Id</u>. (emphasis added).

(2)    If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

    (A)    the claim relies on--

    (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Section 2254(e)(2) provision applies <u>only</u> "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings[.]"  <u>See</u> <u>Norman v. Stephens</u>, __ F.3d __, 2016 WL 1085749, at *6 (5th Cir. Mar. 18, 2016).  The United States Supreme Court interpreted the phrase "failed to develop" to mean a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  <u>Williams v. Taylor</u>, 529 U.S. 420, 432 (2000).

The <u>Williams</u> Court held that a state defendant has not "failed to develop" the factual basis of a claim in state court simply because "his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance."  <u>Id</u>.  On the other hand, if he or his counsel made no diligent effort to develop the factual basis, no evidentiary hearing is warranted, unless one of the Section 2254(e)(2) exceptions is met.  <u>Id</u>.

23

Even then, "the district court retains discretion over the decision to grant an evidentiary hearing once a petitioner overcomes the barriers presented by § 2254(e)(2)." Clark v. Johnson, 202 F.3d 760, 765 (5th Cir. 2000). The district court may impose other requirements in addition to the ones set forth in Section 2254(e)(2). Id. For example, a district court may refuse an evidentiary hearing where there is no "factual dispute which, if resolved in [the petitioner's] favor, would entitle him to relief." Id. at 766.

In this case, the record establishes that Carlisle failed diligently to develop a record in the state courts before proceeding with federal habeas review. For instance, the record does not contain a request by Carlisle for written reasons from the drug court or a mandamus for the court to provide reasons. Even after the first per curiam was issued by the drug court, Carlisle made no request to remand the case for an evidentiary hearing on the contempt ruling. Instead, Carlisle maintained his challenges on procedural grounds and the authority of the drug court to impose the jail sentence without making a record or allowing submission of other evidence. As noted by the State, the record also shows no attempt by Carlisle formally to request or subpoena the "records" sought from sources other than the drug court itself.

While the extent of Carlisle's efforts to develop information before coming to federal court is uncertain, it is clear that Carlisle is not satisfied with the clear reasons (factual and legal) given by the state drug court in the per curiam opinions issued at the direction of the Louisiana Fifth Circuit and the Louisiana Supreme Court on the post-

contempt review.  It is also clear from the records before me that Carlisle has failed to meet any of the Section 2254(e)(2) factors to warrant an evidentiary hearing to develop facts to resolve his federal petition.

Under the first factor, Carlisle does not assert any claim that relies on a new, retroactive rule of constitutional law that was previously unavailable.  In fact, three of his claims as written fail to assert any federal grounds for relief and instead are based on the application and interpretation of state law regarding the powers of the drug court.  He alleges that the drug court exceeded its authority under Louisiana law, which fails to require the drug court to maintain a proper record, and that Louisiana law does not intend the drug court waiver of rights to act as a waiver of due process rights in collateral contempt proceedings in the drug court.  The only potential federal claims would be those of general denial of due process, if there was a violation of state law and ineffective assistance of counsel.  Neither of these claims involves a new, retroactive rule of law, and the latter claim is not exhausted[40] and cannot form the basis of relief.  28 U.S.C. § 2254(b)(1)(A).

Under the second factor of Section 2254(e)(2), an evidentiary hearing may be held if the claim relies on a factual predicate that could not have been previously discovered

---

[40]As will be discussed in more detail in the following section, the Louisiana Supreme Court writ application does not include a claim of ineffective assistance of counsel and that claim is not exhausted. As such, this court has before it a mixed petition, involving both exhausted and unexhausted arguments. Any unresolved factual or legal issues related thereto should be first brought to the state courts on grounds of comity.

by exercise of due diligence.  The nature of Carlisle's contempt conviction, the length of his sentence and the waiver of his rights are all known.  His challenges in this court are to the authority of the drug court to impose a contempt sanction and the expansion of the waiver of rights to drug court proceedings.  These issues involve interpretation and application of Louisiana law, not fact.

Even the unexhausted question of effective assistance of counsel in failing to meet with him, speak at the weekly drug court meetings, and protest when the drug court sanctioned Carlisle to contempt and jail time is not a new factual predicate.  Carlisle alleges that the failings of his appointed drug court counsel permeated the three years of drug court proceedings before August 25, 2015.  Each of Carlisle's assertions are either law based, discernable from the current record and the law, or within Carlisle's knowledge and do not require an evidentiary hearing to develop.  I also note that Carlisle now has the record documents he desired from the State, the drug court and the probation and treatment staff.

Under the third factor, Carlisle has not asserted a claim involving an error related to his guilt or innocence.  He has not presented any factual argument that would cause a jury or fact-finder to find him not guilty of contempt.  In addition, the Louisiana Fifth Circuit provided factual development when it required the drug court to issue the per curiam decision.  Those factual and legal findings are now in the state court record and demonstrate that Carlisle freely confessed that he lied to the drug court and his probation

officer.  He does not deny that he lied.  Carlisle's claim that he cannot adequately challenge the drug court's per curiam opinions does not provide a basis for an evidentiary hearing in federal court, especially where his claims challenge the contempt proceeding on procedural and jurisdictional grounds.

For these reasons, Carlisle has failed to prove his entitlement to an evidentiary hearing under Section 2254(e)(2).  Moreover, this court's review of his claims is limited to the record that was before the state courts that reviewed his claims on the merits, <u>Cullen</u>, 563 U.S. at 181, and those records are before this federal court.  Any other factual information sought by Carlisle is not clearly relevant to the claims asserted in his federal habeas petition. He is not entitled to an evidentiary hearing to develop information related to the probation revocation proceeding pending in the drug court and which is <u>not</u> before this court.

Under Section 2254(e)(2), an evidentiary hearing is not to be granted to a petitioner like Carlisle who failed diligently to develop facts in the state courts.  Carlisle has failed to establish any of the exceptions allowed under Section 2254(e)(2).  His claims are not based on a new, retroactive rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence. The facts underlying Carlisle's claims do not establish by clear and convincing evidence that he would not have been found guilty of the underlying offense.  His motion for an evidentiary hearing should be denied.

27

IV.    FAILURE TO EXHAUST

In addition to the excessive sentence claim and the questions regarding the drug court's jurisdiction, Carlisle asserts that his prior, appointed drug court counsel provided ineffective assistance when he failed adequately to challenge the drug court's actions, including the expansion of its jurisdiction, the failure to hold open and recorded hearings, and its prior contempt order and sentence.  I find that state court review of these arguments has not been exhausted for the following reasons.

"Section 2254(b) requires that prisoners must ordinarily exhaust state court remedies before filing for federal habeas relief." Cullen, 563 U.S. at 182; Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) ("A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief.") (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)).  The Supreme Court has consistently interpreted Section 2254 to require a federal habeas petitioner to complete exhaustion before seeking federal relief in order to promote "'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'" (citations omitted) Carey v. Saffold, 536 U.S. 214, 220 (2002) (quoting Williams, 529 U.S. at 436) and O'Sullivan v. Boerckel, 526 U.S. 838, 844-845 (1999)); Cullen, 563 U.S. at 186; Jiminez v. Quarterman, 555 U.S. 113, 121 (2009); Woodfox v. Cain, 805 F.3d 639, 648

(5th Cir. 2015) (failing to require complete exhaustion "upsets the federal-state comity concerns of the AEDPA ... .").

For this reason, the Supreme Court also provides that petitions containing unexhausted claims and mixed petitions containing both exhausted and unexhausted claims should be dismissed to require complete exhaustion. Pliler v. Ford, 542 U.S. 225, 233 (2004); Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20). To achieve these important goals of deference to state court proceedings, 28 U.S.C. § 2254(b)(1)(A) does not allow a federal court to grant relief on a habeas claim, unless the petitioner has exhausted state court remedies. Cullen, 563 U.S. at 181. Under 28 U.S.C. § 2254(b)(2), however, this court may address an unexhausted claim only if it is to be "denied on the merits."

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Whitehead, 157 F.3d at 387 (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). It is not enough for a petitioner to assert the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

The state records reflect that Carlisle asserted two issues in his original writ

application filed by counsel in the Louisiana Fifth Circuit following the drug court's

contempt order:[41]

> Issue No. 1:  Whether the Judge can charge, convict and sentence a
> Drug Court probation to six (6) months in jail for direct contempt (LA C.
> CR Proc. Art.21), without a hearing, without a record, without a transcript,
> without the prosecutor in the courtroom, without allowing the defendant to
> adduce evidence, or show that he was not in contempt, without a factual
> statement showing the basis for contempt, in violation of La. Code Crim.
> P. art. 21-25 and LSA R.S. 13-4611?
> Issue No. 2:  Whether the general waiver to jury trial signed by the
> Probationer when he pled guilty to the initial charges, accepting probation
> (in the Drug Court program,) is also effective to waive all due process
> rights in connection with Contempt charges, which is a separate subsequent
> charge under Louisiana statutory law?

To support these issues, Carlisle's counsel assigned five errors:[42] (1) "No Basis for

Contempt."  (2) "Recording of Proceedings." (3) "No Evidentiary Hearing Permitted/No

Waiver." (4) "Judge Exceeded Statutory Authority as well as the Rules and Regulations."

(5) "Exceeded Legislative Authority."

Carlisle's counsel filed a supplement to that writ application after the drug court's

first per curiam opinion was issued.[43]  In that pleading, Carlisle addressed the additional

"points" that the drug court lacked records, closed hearings were not protocol under the

drug court statute, there was no authority for the penalty imposed, no waiver of rights

---

[41]St. Rec. Vol. 2 of 3, 5th Cir. Writ Application, pp. 12-13, 9/25/15.

[42]Id., pp. 13-20.  The brief misnumbers the errors as one through six, skipping five.

[43]St. Rec. Vol. 2 of 3, Supplement to Application for Writ, 10/13/15.

occurred, and his representation by counsel was rendered ineffective by the drug court's procedures.

Under the last supplemental point, Carlisle asserted that the appointment of counsel for a drug court defendant was meaningless in light of the closed proceedings conducted by the drug court and the "team approach" used to move a defendant through the process. Carlisle asserted that the role of a drug court defendant's appointed counsel was stifled by the drug court's unconstitutional and unlawful procedures. He also complained that during his probation period, his appointed drug court counsel did not protest the imposition of contempt sanctions or the procedures used by the drug court, including the non-public proceedings and the out-of-court meetings. He argues that his counsel also did not request that a court reporter be present because, under the "team effort" procedures utilized by the drug court, no such actions were encouraged or made available to counsel. Carlisle's writ application was denied by the Louisiana Fifth Circuit as meritless.

When Carlisle proceeded before the Louisiana Supreme Court, his writ application referenced only three specific assignments of error:[44] (1) "The probation waiver does not cover separate contempt charge." (2) "The Drug Court waiver as interpreted by the court of appeal, exceeds the legislative authority as does the six month jail term." (3) The Drug Court waiver relied upon by the Fifth Circuit is unconstitutional and void as overly

---

[44]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 15-KK-2078, pp. iii, 4-5, 10, 16, 11/12/15.

broad.  Acting through counsel, Carlisle did not assert a claim of ineffective assistance of counsel to the Louisiana Supreme Court.

Instead, the writ application referenced the actions of Carlisle's appointed counsel only to support the argument that the drug court exceeded its authority and improperly expanded the waiver of rights to any proceedings before it.  In doing so, Carlisle referred to his prior appointed counsel as a part of the drug court judge's "team," who was not allowed to be "independent defense counsel," and that counsel's presence was "<u>irrelevant</u> to the issue at stake in this application."[45] (emphasis added).  Carlisle defined the "issue at stake" as the drug court's exceeding its statutory and jurisdictional powers.  Carlisle clearly did not assert an independent claim of ineffective assistance of counsel before the Louisiana Supreme Court.

Carlisle therefore did not assert a separate constitutional claim of ineffective assistance of counsel in his counsel-filed writ application to the Louisiana Supreme Court.  Because a claim of ineffective assistance of counsel was not specifically raised to the Louisiana Supreme Court, the issue is not exhausted.

Thus, the record establishes that Carlisle has failed to exhaust available state court remedies as to <u>all</u> of the claims raised in this court.  This case, which includes both exhausted and unexhausted claims, is therefore a "mixed petition," which is subject to dismissal for that reason.  <u>Whitehead</u>, 157 F.3d at 387 (citing <u>Nobles</u>, 127 F.3d at 420).

---

[45] <u>Id</u>., pp. 17-18.

The record discloses no good cause for Carlisle's failure to exhaust review of all of his claims, and this court can find none.  Rhines v. Weber, 544 U.S. 269, 278 (2005) (dismissal is appropriate where no good cause is shown for the failure to exhaust).  The Supreme Court has long required that a mixed petition like this one be dismissed without prejudice to allow for complete exhaustion.  Pliler, 542 U.S. at 233 (citing Rose, 455 U.S. at 510).  The Supreme Court has also provided, however, that, to avoid dismissal of a mixed petition, a petitioner like Carlisle can choose to amend his petition to dismiss or exclude the unexhausted claims and proceed with only the exhausted claims.  Pliler, 542 U.S. at 233.  If the petition is not dismissed as moot as previously recommended, this choice would be available to Carlisle.

Having shown no good cause for his failure to exhaust, and if the petition is not dismissed as moot, the petition should be dismissed without prejudice to allow Carlisle to exhaust available state court remedies as to all of his claims, unless he amends or resubmits this habeas petition to present only exhausted claims.  Pliler, 542 U.S. at 233 (citing Rose, 455 U.S. at 510); Whitehead, 157 F.3d at 387.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Carlisle's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as moot.

In the alternative, if the court finds that his petition is not moot, it is **RECOMMENDED** that Carlisle's Motion for Full Evidentiary Hearing (Rec. Doc. No. 9) be **DENIED**, and his petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies, unless he amends his petition to dismiss the unexhausted claim and pursue only the exhausted claims, as described above.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[46]

New Orleans, Louisiana, this _____3rd_____ day of June, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[46]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

34