## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TAYLOR CARLISLE**                                          **CIVIL ACTION**

**VERSUS**                                                          **NO. 16-838**

**NEWELL NORMAND**                                    **SECTION "D"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.    FEDERAL PROCEDURAL BACKGROUND

On February 1, 2016, counsel for Taylor Carlisle filed a federal habeas corpus petition challenging his six month sentence on a second contempt of court conviction

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

imposed by the Jefferson Parish Drug Court on August 25, 2015.[2] Carlisle asserted that he was denied the right to appeal the contempt sentence, which he argues was excessive and imposed without due process, and denied effective assistance of counsel during the proceedings. The State filed a response in opposition asserting that Carlisle failed to exhaust state court review of the ineffective assistance of counsel claim and his remaining claims are not cognizable on federal habeas review.[3]

On June 3, 2016, I issued a report recommending that Carlisle's federal habeas corpus petition be dismissed with prejudice as moot, because he had completed the sentence under attack, and alternatively dismissed without prejudice for failure to exhaust state court review of all claims.[4] On February 21, 2017, the district judge adopted the report and recommendation and dismissed Carlisle's petition with prejudice as moot.[5] Carlisle appealed to the United States Fifth Circuit Court of Appeal.[6]

On December 13, 2018, the United States Fifth Circuit Court of Appeals vacated this court's judgment because the district court should have presumed that a collateral consequence existed because the contempt conviction could be used in a future multiple

---

[2]Rec. Doc. No. 1.

[3]Rec. Doc. No. 6.

[4]Rec. Doc. No. 30.

[5]Rec. Doc. Nos. 38, 40.

[6]Rec. Doc. No. 41.

offender bill.[7]  The court remanded the matter for further proceedings.  On July 11, 2019,

the matter was referred to me for report and recommendation.[8]

## II.    STATE FACTUAL AND PROCEDURAL BACKGROUND

Carlisle was charged by bills of information on December 17, 2012, in Jefferson

Parish Case No. 12-6158 with possession of oxycodone (percocet) and in Case No. 12-

6159 with theft of goods, possession of marijuana and possession of drug paraphernalia.[9]

On January 30, 2013, Carlisle entered guilty pleas to the charges in both cases.[10]  In Case

No. 12-6159, he was sentenced to time served.[11]  In Case No. 12-6158, he entered his

guilty plea under the Louisiana Drug Court Statute, La. Rev. Stat. § 13:5304, and his

sentence was deferred contingent upon his completion of the Jefferson Parish Intensive

Drug Program while on probation.[12]  The program required Carlisle to maintain regular

contact with the program's probation officer and the drug court, attend regular Alcoholics

---

[7]Rec. Doc. No. 63.

[8]Rec. Doc. No. 67.

[9]St. Rec. Vol. 1 of 3, Bill of Information, No. 12-6158, 12/17/12; Rec. Doc. Nos. 1 & 6.

[10]St. Rec. Vol. 1 of 3, Plea Minutes, 1/30/13; Plea of Guilty & Waiver of Rights, 1/30/13; Rec. Doc. Nos. 1 & 6.

[11]Rec. Doc. Nos. 1 & 6.

[12]St. Rec. Vol. 1 of 3, Plea Minutes, 1/30/13; Plea of Guilty Under 13:5304, 1/30/13.

Anonymous ("AA") meetings, consent to regular drug testing and present required documentation to the probation officer and the drug court.[13]

On August 25, 2015, Carlisle "did not appear before the bar of the Court this day for Drug Court," which led to issuance of an attachment for his appearance.[14] The attachment required Carlisle "to answer for a contempt in neglecting or refusing to attend before said Court as a defendant."[15] Later that day, Carlisle met with his probation officer and appeared before the drug court.[16] At the meeting with his probation officer, Carlisle failed to present required documentation, provided inaccurate information to the probation officer and admittedly lied to the probation officer, all of which was reported to the drug court when Carlisle made his appearance.[17] Carlisle also admitted to the drug court that he lied about losing the documentation he was supposed to deliver and lied about attending certain AA meetings.[18] At the request of the probation officer, the drug court concluded that Carlisle misrepresented this information and imposed a sanction of six months in jail "flat-time" for contempt, after which a probation revocation proceeding

---

[13]St. Rec. Vol. 1 of 3, Schedule of Fines, Fees, Sentencing Provisions & Probation Requirements, 1/30/13.

[14]St. Rec. Vol. 1 of 3, Minute Entry #47, 8/25/15.

[15]St. Rec. Vol. 1 of 3, Minute Entry #48, 8/25/15; Attachment, 8/25/15.

[16]St. Rec. Vol. 1 of 3, Minute Entry #49, 8/25/15; St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[17]Rec. Doc. No. 17, p. 2, pp. 3-4, 8/25/15 entry; St. Rec. Vol. 1 of 3, Minute Entry #49, 8/25/15.

[18]Rec. Doc. No. 17, pp. 3-4, 8/25/15 entry.

would be scheduled.[19]  Carlisle was taken into custody at 1:00 p.m. that day and ordered to return to drug court on September 1, 2015.[20]  The previously issued attachment was deemed satisfied on August 27, 2015.[21]

Upon Carlisle's return to court on September 1, 2015, he was accompanied by retained counsel, and both his retained counsel and Carlisle's current federal habeas counsel were allowed to attend the meeting with probation staff.[22]  Attending that meeting were the drug court judge, Carlisle, his retained and current counsel, the prosecutor, the probation officer and treatment staff.[23]  During the meeting, Carlisle's counsel were informed of the program's sanction procedures, Carlisle's sanction history, and the allegations against Carlisle underlying the contempt.[24]  At that meeting, the drug court allowed Carlisle's counsel to present mitigating evidence and argument regarding Carlisle's remorse, record of negative drug tests, employment and child support obligations.[25]

---

[19]Rec. Doc. No. 17, pp. 3-4, 8/25/15 entry; St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15; Per Curiam, 11/23/15.

[20]Rec. Doc. No. 17, pp. 3-4, 8/25/15 entry; St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15; Per Curiam, 11/23/15; St. Rec. Vol. 1 of 3, Arrest Register, 8/25/15.

[21]St. Rec. Vol. 1 of 3, Recall of Attachment, 8/27/15.

[22]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15; Rec. Doc. Nos. 1, 6, 9, 15, 19.

[23]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15; Rec. Doc. Nos. 1, 6, 9, 15, 19.

[24]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[25]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

After the meeting, the drug court judge, prosecutor, defense counsel and program officials appeared in open court, where Carlisle's counsel sought leave to put his mitigation evidence on the record.[26]  The judge advised counsel that there was no recording being made.  The court noted counsel's objections and replied to the request for a transcript by repeating that no recording was being made.[27]  After considering the mitigating information provided by counsel at the meeting, the drug court determined that the contempt and jail sanction were warranted.[28]  The drug court then reiterated that Carlisle was to serve six months in jail for contempt for admittedly lying to his probation officer.  The court ordered Carlisle held after completion of that term for a probation revocation proceeding at a later date.[29]  Carlisle's probation for the underlying drug conviction eventually was revoked on August 10, 2016, and on February 7, 2018, he was granted conditional parole following completion of a long-term Department of Corrections ("DOC") substance abuse/treatment program.[30]

---

[26]St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15; Per Curiam, 11/23/15; St. Rec. Vol. 1 of 3, Minute Entry #49, 8/25/15.

[27]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[28]St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[29]St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15; Per Curiam, 11/23/15; St. Rec. Vol. 1 of 3, Minute Entry #49, 8/25/15; Minute Entry, 9/1/15; Rec. Doc. No. 17, pp. 3-4, 8/25/15 entry.

[30]Rec. Doc. No. 56-3, p.4; Rec. Doc. No. 56-5, p.1.

After the drug court's contempt hearing, both the Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court denied Carlisle's subsequent writ applications.[31] Specifically, after receiving the drug court's October 9, 2015, per curiam reasons for the contempt and sentence, the Louisiana Fifth Circuit found that Carlisle's waiver of rights upon entry of his original drug court guilty plea also waived his due process rights during the subsequent drug court proceedings, which meant the proceedings did not have to be recorded.[32] The appellate court further held that Carlisle's contempt charge and the related sentence were within the authority of the drug court. The Louisiana Supreme Court obtained a second per curiam opinion from the drug court dated November 23, 2015, and denied Carlisle's writ application without stated reasons.[33]

## III.   FEDERAL PETITION

Carlisle challenges his six-month contempt sentence on the following grounds:[34] (1) The sentence exceeded the Louisiana statutory maximum for contempt and the drug court's statutory authority to sanction a drug court participant. (2) The conviction for contempt/sanctions could not be adequately challenged, because it was imposed without

---

[31]State v. Carlisle, 184 So.3d 709 (La. 2016); St. Rec. Vol. 1 of 3, La. S. Ct. Order, 2015-KK-2078, 1/15/16; 5th Cir. Order, 15-KH-597, 10/16/15.

[32]St. Rec. Vol. 1 of 3, 5th Cir. Order, 15-KH-597, 10/16/15; St. Rec. Vol. 3 of 3, Per Curiam, 10/9/15.

[33]Carlisle, 184 So.3d at 709; St. Rec. Vol. 1 of 3, La. S. Ct. Order, 2015-KK-2078, 1/15/16; St. Rec. Vol. 3 of 3, Per Curiam, 11/23/15.

[34]Rec. Doc. No. 1, 1-3.

transcription, in a closed courtroom, with no opportunity to be heard in defense and without the defendant or prosecutor present. (3) There is no state statutory authority to apply the general waiver of appeal and other rights entered at the time of the underlying guilty plea to bar due process in and review of the contempt conviction and sentence issued by the drug court. (4) He was denied effective assistance of counsel during the contempt proceedings, including the out-of-court meetings.

In its opposition to Carlisle's petition, the State asserts that review of the ineffective assistance of counsel claim was not exhausted in the state courts.[35] The State also asserts that the claims of excessive sentence and inadequate court records and transcripts are not cognizable on habeas corpus review because they involve the application and interpretation of state law. The State further asserts that the state courts' denial of relief on the three exhausted claims was not contrary to federal law. The State contends that Carlisle had a long history of noncompliance with the terms of his drug court probation and was frequently penalized with sanctions, community service and jail time, including a prior 90-day contempt sentence.

## IV.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[35]Rec. Doc. No. 6.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[36] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Carlisle's petition filed by his counsel on February 1, 2016.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; <u>i.e.,</u> the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Carlisle's petition is timely and does not assert a state court-imposed procedural bar to review by this federal court. The State asserts, however, that Carlisle failed to exhaust state court review of the ineffective assistance of counsel claim and otherwise has presented non-cognizable and meritless claims. As discussed in my prior Report and Recommendation (Record Doc. No. 30), Carlisle failed to exhaust state court review of his ineffective assistance of counsel claim. When a federal court is faced with an unexhausted claim, however, the court may nevertheless address the claim when, like this one, it is without merit. 28 U.S.C. § 2254(b)(2). For the following reasons, Carlisle's petition should be denied.

---

[36]The AEDPA, which was signed into law that day, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

V.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001) (brackets in original); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry, 532 U.S. 782, 792-93 (2001)

(citing Williams, 529 U.S. at 405-08); Hill, 210 F.3d at 485.  The "critical point" in

determining the Supreme Court rule to be applied "is that relief is available under

§ 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a

clearly established rule applies to a given set of facts that there could be no 'fairminded

disagreement' on the question."  White v. Woodall, 572 U.S. 415, 427 (2014) (citing

Harrington v. Richter, 562 U.S. 86, 103 (2011); Knowles v. Mirzayance, 556 U.S. 111,

122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the

facts at hand,' then by definition the rationale was not 'clearly established at the time of

the state-court decision.'"  Id. at 426 (quoting Yarborough v. Alvarado, 541 U.S. 652,

666 (2004)).

    "'[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the state-court decision applied [a Supreme

Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford

v. Visciotti, 537 U.S. 19, 24–25 (2002)) (citations omitted; brackets in original).  Rather,

under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    CONTEMPT AUTHORITY OF THE DRUG COURT (CLAIM NO. 1)

Carlisle asserts that the drug court imposed a contempt sentence of six months in excess of the allowable state statutory maximum for contempt and was without statutory authority to impose that sanction for a probation violation. Specifically, Carlisle argues that the drug court was authorized under Louisiana's statutory scheme to sanction a participant only by revocation of probation and removal from drug court participation and not to impose an additional prison term under the as a contempt sanction.

Carlisle asserted this claim in a writ application before the Louisiana Fifth Circuit, which provided the last reasoned opinion denying Carlisle's claim as meritless. See Wilson v. Sellers, 138 S. Ct. 1188, 1193-94 (2018) (the federal habeas court must look through to the last reasoned opinion on the merits when applying the AEDPA deferential standard); Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same

grounds as the last reasoned state court opinion).  The court held that Carlisle consented to the terms and conditions of the drug court program imposed in furtherance of his rehabilitation, including sanctions and jail time, citing La. Rev. Stat. § 13:5304(B)(3)(d) and (C)(1) and the drug program agreement.[37]  The court also concluded that there was sufficient factual basis for the drug court's contempt finding in accordance with La. Code Crim. P. arts. 20, 21 and 22, as demonstrated and supported by the drug court's October 9, 2015, per curiam reasons.  After obtaining a more extensive per curiam opinion on November 23, 2015, the Louisiana Supreme Court also denied Carlisle's related writ application without stated reasons.

Carlisle persists in his claim that he was sentenced by the drug court to a contempt term not permitted under the state statute and to a sentence beyond the drug court's statutory maximum for violations of the drug court agreement.  The argument is premised on at least one misconception: Carlisle was sentenced to six months in jail for his

---

[37]The drug court program is authorised by La. Rev. Stat. § 13:5304, which provides in relevant part as follows:

B.    Participation in probation programs shall be subject to the following provisions: [. . .]

(3)    In offering a defendant the opportunity to request treatment, the court shall advise the defendant of the following: [. . .]

(d)    The court may impose any conditions reasonably related to the complete rehabilitation of the defendant. [. . .]

C.    (1)    The terms of each probation agreement shall be decided by the judge. The defendant must agree to enter the program and sign a probation agreement stating the terms and conditions of his program. The defendant must plead guilty to the charge in order to be eligible for the drug division probation program. [. . .]

contemptuous lies to the drug court, not because he violated his drug court probation. Nevertheless, Carlisle now asks this federal habeas court to find that the state courts erred in interpreting state laws governing the drug court's authority to impose the contempt sentence. Carlisle's claims are not cognizable in a federal habeas proceeding because he asserts only errors of state statutory law and its interpretation by the state courts.

"The principle that state courts are the final arbiters of state law is well-settled." Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Ins. Co., 706 F.3d 622, 629 (5th Cir. 2013). Thus, a federal habeas court "lacks authority to rule that a state court incorrectly interpreted its own law." Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011); Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law). This is exactly what Carlisle asks this court to do.

The Louisiana courts, including the Louisiana Supreme Court, have rejected Carlisle's claims that the drug court acted without or exceeded its state statutory authority by imposing the six-month contempt sentence. "When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions are state law." Charles, 629 F.3d at 501. A federal court, however, does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted). The courts have long held that "'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168

F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991));

Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state's

interpretation of its own law in a federal habeas corpus proceeding.").  He is not entitled

to federal law based on his claims of state law error.

It is well settled that federal habeas corpus relief may be granted only to remedy

violations of the Constitution and laws of the United States; mere violations of state law

will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); Thomas v.

Ieyoub, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994) ("[E]rrors of state

law . . . must rise to a constitutional dimension in order to merit habeas relief."); Smith

v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994) ("Even if the

court's [ruling] was a violation of Louisiana law, we, as a federal habeas court, are

without authority to correct a simple misapplication of state law; we may intervene only

to correct errors of constitutional significance."); Manning v. Warden, La. St.

Penitentiary, 786 F.2d 710, 711-712 (5th Cir. 1986) ("The simple fact is that habeas

corpus is available only for the vindication of rights existing under federal law; not rights

existing solely under the rules of state procedure.").  Furthermore, "fleeting references"

to the U.S. Constitution and the phrase "due process" are not sufficient to change the

nature of a state law claim into a cognizable federal issue.  Accord Norris v. Davis, 826

F.3d 821, 831 (5th Cir. 2016) (citing Wilder v. Cockrell, 274 F.3d 255, 260 (5th Cir.

2001) (a habeas petitioner does not present a federal claim by merely using the phrase "due process of law" buried in state law argument).

Instead, to establish a cognizable due process violation, Carlisle must demonstrate that a state court error violated due process in a manner that rendered the state court proceeding fundamentally unfair. See, Estelle, 502 U.S. at 67-68; see, Lisenba v. People of St. of Cal., 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right). A claim of denial of due process under habeas law presents a mixed question of law and fact. Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000); Woodfox v. Cain, 772 F.3d 358, 369 (5th Cir. 2014). To obtain relief, Carlisle must establish that the denial of relief by the state courts was contrary to, or an unreasonable application of, federal law. He has not done so.

As clearly held by the state trial and appellate courts, the Louisiana drug court program and statutory language authorized the actions taken by the drug court, thus leaving no error under state law to address. The state courts also concluded that Carlisle acquiesced to any sanctions imposed by the drug court in furtherance of his case and rehabilitation when he joined the program by agreement pursuant to La. Rev. Stat. § 13:5304.

Part V(A) of the Schedule of Fines, Fees, Sentencing Provisions & Probation Requirements, signed by Carlisle on January 30, 2013, establishes his agreement that Carlisle "shall be subject to arrest at any time for the purpose of returning defendant to the court for disposition."[38]  That same section also provides:[39]

> FAILURE TO COMPLY with any one of the foregoing sentencing provisions and/or probation conditions may result in any or all of the following: [...]
> B. Finding defendant in contempt of court and imposition of punishment even if the term of probation has ended. [...]

The inherent power of the drug court to utilize and enforce state contempt rules falls under La. Code Crim. P. arts. 17.  State v. Hicks, 607 So.2d 937, 948 (La. App. 2nd Cir. 1992).  These provisions give all state courts power to hold in direct contempt and sanction any person who acts in the presence of the court to "obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority."  La. Code Crim. P. arts. 20, 21.  A criminal defendant may be held in contempt under these rules "at any stage of the criminal proceeding."  State v. Broyard, 183 So.3d 796, 800 (La. App. 4th Cir. 2015).  Violation of the rule against direct contempt, like that committed by Carlisle, carries a penalty of a fine of not more than

---

[38]St. Rec. Vol. 1 of 3, Schedule of Fines, Fees, Sentencing Provisions & Probation Requirements, 1/30/13.

[39]Id. (emphasis added).

$500 or imprisonment for not more than six months, or both.  La. Code Crim. P. art. 25(b).

Carlisle told "repeated lies to the court."[40]  Carlisle lied about losing his Alcoholics Anonymous sheets.[41]  He lied about attending Alcoholics Anonymous meetings.[42]  He lied about associating with a convicted felon.[43]  For these reasons, the state trial court held him in contempt on August 25, 2015, and sentenced him to serve six months in jail.

As noted above, these particular contempt sanctions were separate from those underlying the probation revocation that occurred later.  The contempt sentence was based on Carlisle's contumacious behavior before the court and not imposed merely to add additional jail time to his underlying sentence.  In addition, the six-month sentence, and the prior 90-day sentence, were within the statutory authority granted to a Louisiana court under its contempt rules.

Carlisle fails to establish facts supporting any state court error that could have triggered due process concerns.  He has not shown that the contempt sanction(s) or the length of the contempt sentence(s) were outside of the statutory authority of the drug court.  Without an error under state law in the imposition of the contempt sanctions,

---

[40]St. Rec. Vol. 1 of 3, 5th Cir. Order, p. 3, 15-KH-597, 10/16/15.

[41]St. Rec. Vol. 3 of 3, Per Curiam, pp. 1-2, 10/9/25; see also Per Curiam, pp. 3-4, 11/23/15.

[42]Id.

[43]Id.

Carlisle "has no basis for any alleged due process violation," and his proceedings were not fundamentally unfair.  See Robinson v. Whitley, 2 F.3d 562, 567 (5th Cir. 1993) (if petitioner fails to show state court error, there is no basis for a due process violation).

The state courts' denial of relief was not contrary to or an unreasonable application of federal law.  Carlisle is not entitled to federal habeas relief on this claim.

## VII.   ADEQUATE RECORD AND STATE COURT REVIEW (CLAIMS NO. 2 & 3)

Carlisle alleges that he was unable adequately to challenge the contempt conviction and sanctions because, contrary to state law, the proceeding took place without transcription in a closed courtroom, with no opportunity to be heard in defense and without the defendant or prosecutor present.  Carlisle also asserts that there is no state statutory authority to apply the general waiver of appeal and due process rights he made at the underlying guilty plea to bar due process protections during review of the contempt proceeding by the drug court.

Carlisle's counsel presented this claim to the Louisiana Fifth Circuit on review of his contempt proceedings.  The Louisiana Fifth Circuit held that, while a criminal defendant in Louisiana normally has a right to public and recorded proceedings, Carlisle's written waiver of rights and his written agreement to participate in the drug court program waived his rights to open, transcribed or recorded sessions before the drug court.  The court also requested and utilized a per curiam opinion obtained from the drug court to verify the record and reasons for the contempt sanction.  After obtaining a

second per curiam, the Louisiana Supreme Court confirmed these findings when it denied Carlisle's subsequent writ application without stated reasons. Wilson, 138 S. Ct. at 1193-94.

Carlisle has again framed his claim as a violation of state law.  As discussed previously, federal habeas courts do not sit to review errors of state law or to reexamine a state court's determination of a state law questions.  Estelle, 502 U.S. at 67-68; Swarthout, 562 U.S. at 219.  It is not the function of this federal court to act as a "'super' state supreme court."  Wilkerson, 16 F.3d at 67 (citation omitted).

From a federal law perspective, Carlisle's conclusory due process claims do not state a cognizable federal habeas claim or establish that the state courts' denial of relief was contrary to or an unreasonable application of federal law as required for habeas relief.  Woodfox, 772 F.3d at 369.

The United States Supreme Court has held that there is no federal constitutional right to direct appeal of a state conviction.  See Smith v. Robbins, 528 U.S. 259, 270 n.5 (2000) ("The Constitution does not . . . require States to create appellate review in the first place."); Ross v. Moffitt, 417 U.S. 600, 606 (1974) ("[A] State is not obliged to provide any appeal at all for criminal defendants.").  However, once a state creates a right to appeal a criminal conviction, as in Louisiana, the appeal process must comport with the guarantees of due process.  Evitts v. Lucey, 469 U.S. 387, 393, 403 (1985).  Due

process requires a sufficiently complete and accurate record for adequate appellate and other review of a conviction.  Mayer v. City of Chicago, 404 U.S. 189, 198 (1971).

The Supreme Court has never held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief.  Instead, to prevail on a claim that the record was inadequate, a petitioner must prove that the missing transcript actually prejudiced the appeal in some manner.  Green v. Johnson, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted." (citation omitted)); Bozeman v. Cain, No. 09-8423, 2010 WL 2977393, at *4 (E.D. La. June 7, 2010), report and recommendation adopted, 2010 WL 2977402 (E.D. La. July 20, 2010) (petitioner's claim failed when there was no actual prejudice resulting from the failure to transcribe a bench conference).  The record is otherwise "adequate for full appellate review" if it contains the information necessary to address the alleged errors asserted on appeal and without which the appeal was prejudiced. Higginbotham v. Louisiana, 817 F.3d 217, 222 (5th Cir. 2016); Schwander v. Blackburn, 750 F.2d 494, 497-98 (5th Cir. 1985) (quoting State v. Francis, 345 So. 2d 1120, 1125 (La. 1977)); Mullen v. Blackburn, 808 F.2d 1143, 1146 (5th Cir. 1987).

In this case, Carlisle has failed to demonstrate that the drug court record was inadequate for the state appellate courts to review his contempt proceedings arising from his out-of-court meeting with the drug court and his probation officer or that it violated

his rights by denying him a transcript in an open court proceeding. The Louisiana Fifth Circuit and Louisiana Supreme Court reviewed the minute entries and the per curiam opinions of the drug court, which were found more than adequate to determine that there was sufficient basis for the contempt and contempt sentence. Contrary to Carlisle's assertions, the drug court record also included a minute entry dated August 25, 2015, which reflects that Carlisle and his counsel were present in open court before the judicial officer when the contempt and six-month sentence were imposed. This appearance was consistent with the parameters of his drug court agreement, which provides for him to have counsel during any appearance before the drug court, and the contempt order and sentence were clearly done in open court. The factual premise of Carlisle's claim is not supported by the record.

Carlisle also has shown no federal law or constitutional requirement that he be afforded the full panoply of rights in the drug court's conference or the related contempt proceeding pursuant to the drug court agreement or the statutory bounds of the drug court program. The contempt proceeding was not part of the underlying prosecution or probation revocation process. Carlisle has not shown any legal requirement that an assistant district attorney should be present when he received a contempt sanction from the court collateral to the prosecution and revocation process.

Carlisle takes issue with the state courts' reliance on the per curiam orders of the drug court to memorialize what occurred in the conference and in the courtroom when

no transcript was made.  However, federal law allows for the use of alternative devices that fulfill the same function as a transcript.  In Griffin v. Illinois, 351 U.S. 12, 18-20 (1956), the Supreme Court found that a "stenographer's transcript" was not required if "other methods of reporting trial proceedings" would still provide a defendant with "adequate and effective appellate review."  Id. at 20.  In this case, the Louisiana Fifth Circuit and the Louisiana Supreme Court used the per curiam opinions as alternative means for reviewing the contempt proceedings that were not otherwise memorialized by a transcript.  This reliance was not contrary to Supreme Court law.

Carlisle's suggestion that the drug court's per curiam was not accurate or in some way hid the actual discussions is unsupported and unavailing.  Rank speculation that some un-transcribed proceeding might have revealed additional errors which could have been asserted on appeal is insufficient to warrant relief.  See, e.g., Thomas v. Cain, No. 12-2818, 2013 WL 5960808, at *5 (E.D. La. Nov. 6, 2013); Williams v. Cain, No. 05-0710, 2008 WL 3363562, at *26 (E.D. La. Aug. 8, 2006) ("To warrant federal habeas corpus relief on a claim that state court transcripts are unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated, transparent speculation.").

Carlisle has not demonstrated a state court error in violation of due process or that the state court's denial of relief was contrary to or an unreasonable application of Supreme Court law.  He is not entitled to federal habeas relief on this claim.

VIII.  EFFECTIVE ASSISTANCE OF COUNSEL

Carlisle argues that he was denied effective assistance of counsel during the contempt sanction proceedings, including the out-of-court conference with the drug court and probation officer.  He claims that he was not properly represented in accordance with Drug Court Policy and Procedures, the rules of the Louisiana courts and the Due Process Clause during the drug court program, all of which prevented him from presenting an appropriate defense to the contempt charge.  Carlisle claims that his appointed counsel did not meet with him outside of the drug program weekly meetings during the three years before the contempt sanctions.  He further claims that appointed counsel said nothing on Carlisle's behalf during those meetings and failed to "protest" when the drug court imposed the contempt sanctions.

Because Carlisle did not give the state courts a full opportunity to address this claim, the AEDPA's deferential standard of review under Section 2254(d) and Williams, 529 U.S. at 362, does not apply.  28 U.S.C. § 2254(d); Cullen v. Pinholster, 563 U.S. 170, 185-86 (2011); Henderson v. Cockrell, 333 F.3d 592, 597 (5th Cir. 2003).  Instead, the court will review the claim under pre-AEDPA de novo standards of review. Henderson, 333 F.3d at 598 (citing Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009).

In Strickland v. Washington, 466 U.S. 668, 697 (1984), the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Id. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom." Harrington, 562 U.S. at 105. The Harrington court observed that "[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one." Id. The court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence." Harrington, 562 U.S. at 105. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

As a fundamental premise, a defendant has no absolute right to counsel at a probation revocation hearing.  Gagnon v. Scarpelli, 411 U.S. 778, 787-91 (1973); Jones v. Wainwright, 604 F.2d 414, 416 (5th Cir. 1979).  The Supreme Court has emphasized that, in contrast to a criminal prosecution, a probation revocation proceeding is informal in nature.  See Gagnon, 411 U.S. at 788-89 (noting "critical differences between criminal trials and probation or parole revocation hearings").  The Supreme Court has also held that states have no constitutional obligation to provide counsel for indigent persons in all probation or parole revocation cases, except when due process may warrant it based on the serious nature of the violation.  Gagnon, 411 U.S. at 787.

Nevertheless, Louisiana law provides that drug court candidates have "the right to be represented by counsel at all stages of a criminal prosecution and in any court hearing relating to the drug division probation program."  La. Rev. Stat. § 13:5304(B)(4).  The statute further provides that the candidate "shall be represented by counsel at the time of the execution of the probation agreement, and at any hearing to revoke the defendant's probation and discharge him from the program." (emphasis added) Id.  There is no mandate that Carlisle be represented in the weekly, out-of-court meetings with the drug court staff.  Carlisle does not deny that he was made aware of these provisions when he signed his program agreement.  This was reiterated in the state trial court's two per curiam opinions.

The drug court record reflects that Carlisle in fact appeared <u>with</u> counsel at each court hearing that fit the statutory categories, <u>i.e.</u> enrollment in the program, probation violations and revocation proceedings.[44]  Specifically, as indicated in the state court pleadings and opinions, Carlisle appeared <u>with</u> his appointed counsel at the meeting and court hearing on August 25, 2015, when he was found in contempt.  According to the state court opinions, Carlisle was given an opportunity to discuss his contemptuous behavior while his counsel was present.  He also was accompanied by retained counsel and his current habeas counsel at the meeting and open court hearing on September 1, 2015, when the drug court allowed counsel to revisit the basis for the contempt sanction. Carlisle was represented by counsel at each critical point in the proceedings.

Carlisle has not explained what actions his appointed counsel should have taken that would have altered the outcome of his probation process or the contempt proceedings in particular.  Carlisle admitted that he lied to the drug court and its staff. Carlisle was placed in contempt in open court while accompanied by appointed counsel. The records disclose no reason for his appointed counsel to have "protested" the contempt sanction.  In fact, when his later-retained counsel and current habeas counsel compelled the drug court to revisit the contempt, the efforts were not successful.  Carlisle has not shown that a "protest" by his appointed counsel would have been successful.  <u>See</u>

---

[44]<u>See</u> Minute Entry, 1/30/13; Minute Entry 8/20/13; Minute Entry, 10/15/13; Minute Entry, 2/18/14; Minute Entry, 7/22/14; Minute Entry, 4/28/15; Minute Entry - 2, 8/25/15; Minute Entry, 9/1/15.

Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("This court has held . . . that failure to raise meritless objections is not ineffective lawyering; it is the very opposite." (internal quotes and citations omitted)); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections." (citation omitted)).

Carlisle complains that his appointed drug court counsel did not meet with him outside of the drug court weekly meetings.  Carlisle has not identified any particular reasons for counsel to have done so or any prejudicial effect the failure had on his case. Carlisle indicates that appointed counsel instructed Carlisle to contact him if Carlisle wanted to meet, and Carlisle apparently did not do so.  Conclusory claims that meetings should have been held are insufficient to establish either Strickland prong.

Carlisle has failed to establish a particular deficiency in appointed counsel's performance or any prejudice from the representation provided as required to establish a Strickland claim.  Carlisle is not entitled to federal habeas relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Carlisle's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[45]

New Orleans, Louisiana, this ____17th____ day of September, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[45]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.